UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ENOSA STRICKLAND SR., and KATHLEEN KELIIKOA-STRICKLAND, individually, and as co-Personal Representatives of the ESTATE OF ENOSA STRICKLAND JR.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF AUBURN, a Municipality; KENNETH LYMAN, individually,<br><br>Defendants. | NO.<br><br>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND**<br><br>**JURY DEMAND** |

COME NOW Plaintiffs and allege as follows:



E.J
Enosa Strickland Jr.
January 20, 1993 – May 20, 2019

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH
ACTION AND JURY DEMAND - 1

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

# I. PARTIES

1.1 Decedent ENOSA STRICKLAND JR. ("EJ") was born on January 20, 1993, in Riverside, California, to Kathleen Keliikoa-Strickland, and Enosa Strickland Sr. EJ was of Samoan and Hawaiian descent. He was the third of four children. The family relocated to Auburn, Washington in 1999. At the time of his death, EJ was 26 years old and lived with both parents and his younger brother. The Strickland family was very close.

1.2 On February 10, 2022, Plaintiffs ENOSA STRICKLAND SR. and KATHLEEN KELIIKOA-STRICKLAND were appointed the co-Personal Representatives of the ESTATE OF ENOSA STRICKLAND JR. in King County Superior Court Cause No. 22-4-01086-7.

1.3 Defendant CITY OF AUBURN is a political subdivision of the State of Washington. Among other things, the City of Auburn provides law enforcement services through its police department ("APD"). APD's stated mission is "to provide professional law enforcement services to our community." One of APD's stated core values is "Professionalism: Our sense of duty to conduct ourselves to the highest level of competence and character."[1]

1.4 Defendant KENNETH LYMAN ("Officer Lyman") is a City of Auburn police officer who, at all times relevant hereto, was acting within the scope of his employment and under color of state law at all relevant times herein. According to the APD police manual, as a sworn officer, Officer Lyman's fundamental duty is "to serve the community, to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation

---

[1] *Mission-Vision-Core Values*, Auburn Police Department WA Policy Manual (2019).

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 2

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1  and the peaceful against violence or disorder, and to respect the constitutional rights of all to liberty, equality and justice."[2]

## II.  JURISDICTION AND VENUE

2.1  This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

2.2  This Court has general personal jurisdiction over Defendants as they reside and/or work in King County, Washington.

2.3  This Court has specific *in personam* jurisdiction over Defendants because this case arises out of conduct by Defendants that killed EJ and caused damages to the Plaintiffs, and which occurred in the Western District of Washington.

2.4  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), as all Defendants have their principal place of business in this division, King County, and the Defendants work and do business in this state and division.

2.5  The court has subject matter jurisdiction over the Plaintiffs' claims. RCW 2.08.010. Plaintiffs have satisfied all conditions precedent required by RCW 4.96.010 and RCW 4.96.020. A notarized City of Auburn claim for damages was presented to the City of Auburn's City Clerk's Office on February 18, 2022.

2.6  More than sixty (60) calendar days have elapsed since the plaintiffs presented the tort claim form to the City of Auburn.

---

[2] *Code of Ethics*, Auburn Police Department WA Policy Manual (2019).

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 3

### III. STATEMENT OF FACTS

3.1 This case arises from the tortious acts of Officer Lyman and the City of Auburn Police Department that resulted in the death of Enosa Strickland Jr.

3.2 At the time of his death, Enosa Strickland Jr. was not married and had no children. He is survived by his parents, Plaintiffs ENOSA STRICKLAND SR. and KATHLEEN KELIIKOA-STRICKLAND. EJ is also survived by three siblings, Kanela Uncangco, Paese Bautista, and Keawe Strickland.

3.3 Between the time Defendant Officer Lyman joined the Auburn Police Department in 2016 and the time he shot and killed EJ Strickland in 2019, Defendant Officer Lyman was the subject of at least a dozen use of force reviews.

3.4 On May 20, 2019, at 12:47am, Auburn Police Officer Kenneth Lyman and Officer D M were dispatched to a reported domestic disturbance involving EJ and a young woman. The woman had apparently rejected EJ's romantic overtures. The officers arrived on scene at approximately 1:00am. EJ was in the parking lot. EJ was not engaged in any illegal activity or violating any laws. EJ was unarmed. He was not arrested. EJ then called and spoke with his mother Kathleen Keliikoa-Strickland. She hung up and left her home to come and pick up her son EJ.

3.5 Officer Lyman, Officer D M, and EJ waited in the apartment parking lot for EJ's parents to arrive. The officers did not want EJ to drive his own vehicle as they believed he was intoxicated. At some point, the interaction between EJ and the Officers became strained. The interaction then became physical after Officer Lyman struck EJ in the face at approximately 1:28am. No warnings, admonitions, or cautions were issued by either officer before Officer Lyman chose to punch EJ.

3.6     Officers Lyman and D M immediately tackled EJ to the ground. The officers appeared to get on top of EJ and remain on top of him. Once EJ was tackled, he appeared to have been face down the entire time. Approximately one minute into the scuffle, Officer Lyman twice attempted to shoot EJ in the back of his head with his firearm. The first time the weapon did not discharge. The second shot fired and ended EJ's life.

3.7     Officer Lyman fired the shot to the back of EJ's head while EJ was facedown on his stomach. EJ never stood up after he was tackled. EJ was never able to rise from a prone position before he was shot. The video produced by the City of Auburn contains no evidence that EJ posed an imminent risk of serious harm or death to anyone when Officer Lyman chose to shoot and kill EJ.

3.8     In violation of Auburn Police Department policy and Washington criminal law, Officer Lyman carried an unauthorized and illegal dagger on his uniform. RCW 91.41.250. Officer Lyman's unauthorized and illegal dagger was not properly secured. The dagger allegedly fell from its sheath and onto the ground as the scuffle with EJ unfolded. Daggers have no role in the proper conduct of policing.



*Figure 1-Dagger carried by Lyman*

3.9     The Defendants—Officer Lyman and the Auburn Police Department—have subsequently used the presence of Officer Lyman's unauthorized and illegal dagger as justification for the shooting.

3.10    The only other witness to the scuffle, the young woman, stated in her interview after the incident: "I heard drop the knife, drop the knife or I'm gonna shoot and then I heard him laugh, Enosa, and he said what knife are you talking about and then I heard a shot. Well I heard

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 5

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

something hit the floor. I heard like a metal probably what they were referring to as the knife. I heard that clank on the asphalt and then I heard a shot." She heard the clink of metal several seconds before the shot.

3.11	EJ's parents arrived at 1:33am, about four minutes after Officer Lyman shot EJ. They arrived just in time to see their sons' lifeless body on the pavement, handcuffed, with blood dripping down his head. They have suffered and continue to suffer significant trauma and emotional distress from witnessing that scene.

3.12	Defendant Lyman and Officer D M were in the course and scope of their duties at all times relevant hereto.

3.13	Defendant City improperly hired, trained and/or supervised Officer Lyman and Officer D M.

3.14	Defendant City failed to follow and/or enforce its own policies and procedures in regard to daggers. Daggers were not permitted under its policies. No written exemption from the Auburn Police Department existed for Officer Lyman's dagger.

3.15	Multiple lawsuits claiming excessive force have been settled by the City in the recent past. Multiple Auburn Police Department officers have been the subject of repeated complaints of excessive force but have been allowed to continue to police with no meaningful punishment or discipline. The Auburn Police Department tolerates the constitutional violations and has not acted to limit such excessive uses of force.

3.16	Officer Lyman's unjustified shooting and the number of excessive force incidents he has been involved in his short career raise questions about his mental and emotional wellbeing.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 6

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

### IV. CAUSES OF ACTION (A-G)

Plaintiff reallege all facts stated above.

**A. Negligence: Defendant Officer Lyman**

4.1 Defendant had a common law duty to act reasonably in his interactions with EJ and to act with ordinary care.

4.2 Defendant breached the duty to act reasonably and with ordinary care and proximately caused the death of Enosa Strickland Jr and the damages suffered by the Plaintiffs.

**B. Fourth Amendment Excessive Force: Officer Lyman**

4.3 APD Officer Kenneth Lyman, while acting under color of law, used excessive force on Enosa Strickand, Jr. who posed no danger of serious injury or death to anyone.

4.4 APD Officer Lyman's use of force was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, and directly caused the death of Enosa Strickland, Jr. and the damages suffered by the Plaintiffs. Therefore, APD Officer Lyman violated EJ's clearly established Fourth Amendment right to be free from excessive force and unreasonable seizure. This cause of action is brought pursuant to 42 U.S.C 1983.

4.5 As a direct and proximate result of APD Officer Lyman's actions, Enosa Strickland, Jr. was killed and Plaintiffs suffered damages.

**C. Fourteenth Amendment Excessive Force That Shocks the Conscience: Officer Lyman**

4.6 APD Officer Lyman, while acting under color of law, used excessive force on EJ who posed no danger to anyone.

4.7 Defendant Lyman knew that his use of force was likely to seriously injure or kill a completely innocent person such as EJ.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 7

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

4.8 Lyman further knew that there was no possibility that his use of force would prevent any ongoing or imminent danger to anyone.

4.9 APD Officer Lyman's use of force caused EJ' death and the Plaintiff's damages, was grossly disproportionate to the need for action under the circumstances, and was inspired by malice or excess of zeal such that it amounted to abuse of official power that shocks the conscience. Without provocation of any kind or any legitimate reason, APD Officer Lyman shot EJ with a lethal weapon even though EJ posed no risk of serious bodily injury or death.

4.10 Therefore, APD Officer Lyman violated EJ's clearly established Fourteenth Amendment substantive due process right to be free from excessive force in such a way that clearly shocks the conscience This cause of action is brought pursuant to 42 USC 1983.

4.11 As a direct and proximate result of APD Officer Lyman's actions, Enosa Strickland, Jr. was killed and the Plaintiffs suffered damages.

**D.  Negligence: Defendant City of Auburn**

4.12 Defendant owed a duty to properly hire, train, and supervise its employees.

4.13 Defendant breached those duties by failing to adequately train and supervise Officers Lyman and D M.

4.14 Defendant is also vicariously liable for the negligence of Officer Lyman, Officer D M, and any other negligent employees.

**E.  Negligent Infliction of Emotion Distress: All Defendants**

4.15 The conduct, acts, or omissions of Defendants in causing the death of EJ constitute negligent infliction of emotional distress on Plaintiffs.

**F.  Fourth, And Fourteenth Amendment § 1983 Claim – Defendant City of Auburn**

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 8

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

4.16 APD Officer Lyman, while acting under color of law, used excessive force and conscience-shocking force on EJ even though he posed no risk of serious harm or death to anyone. This use of force was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, conscience shocking, and directly caused EJ's death and the Plaintiffs' damages. Therefore, EJ's clearly established Fourth and Fourteenth Amendment rights were violated.

4.17 Defendant City of Auburn, had the following policies, practices, or customs in place when APD Officer Lyman shot EJ:

a. Using, authorizing, and/or tolerating excessive force against suspects;

b. Failing to adequately discipline officers;

c. Failing to adequately supervise officers;

d. Failing to adequately train officers concerning de-escalation of force;

4.18 Each of the policies, practices, or customs delineated above was actually known, constructively known, and/or ratified by City of Auburn Chief of Police, (APD's policymaker), and was promulgated with deliberate indifference to the Fourth and Fourteenth Amendment rights of EJ under the United States Constitution. Moreover, the known and obvious consequence of these policies, practices, or customs was that Auburn Police Department officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

4.19 Moreover, the department was also aware of multiple similar incidents in which unconscionable, excessive, or unreasonable force was used but did not remedy the misconduct.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 9

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

Thus, the City is also directly liable for the department's (and the Chief's) failure to train, supervise, and correct misconduct, which proximately caused EJ's death.

4.20 Consequently, the policies delineated above were a moving force of the constitutional deprivations and injuries visited on EJ , and proximately caused the damages suffered by the Plaintiffs.

## V. DAMAGES

5.1 As a direct and proximate result of the tortious conduct of the Defendants as described above, Plaintiffs have been damaged. They have suffered past and future economic and non-economic damages in an amount to be proven at trial. Their damages include, but are not limited to, the following:

5.2 The Estate of Enosa Strickland Jr., by and through his parents, as co-Personal Representatives, suffered economic and non-economic damages, including pre-death pain and suffering, fear of death, loss of future potential earnings, and loss of enjoyment of life, in an amount to be proved at trial, including all damages as provided under RCW 4.20.010, RCW 4.20.046 and RCW 4.20.060.

5.3 As parents who had significant involvement in the life of an adult child, Enosa Strickland Sr. and Kathleen Keliikoa-Strickland suffered damages in an amount to be proven at trial, including loss of love and companionship of the child, the destruction of the parent/child relationship and all other damages as provided under RCW 4.24.010.

5.4 The parents of decedent who arrived to see their child dead on the pavement of a parking lot are entitled to damages for negligent infliction of emotional distress in an amount to be proved at trial.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 10

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

5.5 Defendant Lyman's conduct was egregious and callous. Plaintiffs seek punitive damages as well to deter future uses of such excessive force.

## VI. DEMAND FOR JURY

6.1 Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants jointly and severally as follows:

a) Fashioning an appropriate remedy and awarding general and special damages, and any other lawful damages in an amount to be proven at trial;

b) Awarding reasonable attorneys' fees and costs as available under the law;

c) Awarding any and all applicable interest on the judgment; and

d) Awarding such other and further relief as the Court deems just and proper.

DATED this 20th day of April, 2022

By: s/Gemma Zanowski
Gemma Zanowski, WSBA #43259
Edward H. Moore, WSBA #41584
Furhad Sultani, WSBA #58778
STRITMATTER KESSLER KOEHLER MOORE
3600 15th Ave W, #300
Seattle, WA 98119
Telephone: (206) 448-1777
Fax: (206) 728-2131
Email: Gemma@stritmatter.com
Ed@stritmatter.com
Furhad@stritmatter.com
Counsel for Plaintiffs

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH ACTION AND JURY DEMAND - 11

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777