UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ENOSA STRICKLAND SR., and KATHLEEN KELIIKOA-STRICKLAND, individually, and as co-Personal Representatives of the ESTATE OF ENOSA STRICKLAND JR.,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF AUBURN, a Municipality; KENNETH LYMAN, individually,<br><br>Defendant. | CASE NO. 22-cv-528<br><br>ORDER |

This matter comes before the Court on Defendant Kenneth Lyman's Motion For Protective Order seeking this Court's affirmation that he may invoke his Fifth Amendment right to Plaintiffs' inquiries. Dkt. No. 38. The Court GRANTS Lyman's motion in so far as it affirms his right to invoke the Fifth Amendment during this litigation. But the Court DENIES Lyman's request to the extent he requests a prospective ruling about the application of the Fifth Amendment during his testimony.

I. BACKGROUND

Plaintiffs' lawsuit against Defendants arises from the death of Enosa Strickland Jr. Plaintiffs allege that Lyman killed Strickland in a 2019 incident involving Strickland, Lyman,

ORDER - 1

and another City of Auburn police officer while responding to a police call. Dkt. No. 12 ¶ 3.6. An interaction between Lyman and Strickland devolved into physical confrontation. *Id*. Defendants contend that during the fight, Strickland grabbed a knife from Lyman's uniform and "thrust the knife at the officer." Dkt. No. 37 at 2. Lyman shot and killed Strickland. Dkt. No. 12 ¶ 3.6. Plaintiffs allege various state and federal constitutional, statutory, and common law claims against Defendants.

In 2021, the Snohomish County Prosecuting Attorney declined to file criminal charges against Lyman for shooting Strickland. Dkt. No. 37 at 5. That same year, the Washington State legislature created the Office of Independent Investigations ("OII") to investigate cases that involved police use of deadly force. *See* RCW 43.102.030(1). The OII "is authorized to review, and may investigate, prior investigations of deadly force by an involved officer if new evidence is brought forth that was not included in the initial investigation[.]" RCW 43.102.030(1)(b). The creation of the OII followed the Washington legislature's "police reform laws," including the creation of a "reasonable officer" standard for criminal prosecutions of police officers: "[a] peace officer shall not be held criminally liable for using deadly force in good faith," including consideration of "whether a similarly situated reasonable officer would have believed that the use of deadly force was necessary to prevent death or serious physical harm to the officer or another individual." RCW 9A.16.040(4).

A year before Snohomish County declined to prosecute Lyman, the King County Prosecuting Attorney brought charges against another City of Auburn police officer, Jeffrey Nelson. Dkt. No. 37 at 3. King County charged Nelson with homicide for killing Jesse Sarey. *Id*. In its prosecutorial briefing, the State cites the "good faith" standard of police officers, and states that "[a] complete reading of the statutes defining the permissible use of deadly force by a police officer plainly includes a requirement of both subjective and objective reasonableness, just as our

ORDER - 2

case law has long recognized in claims of self-defense." Dkt. No. 37, Ex. B at 1; Ex. C at 2. In support of a motion to compel, the State says that it "can articulate numerous ways that Nelson's full tattooing may be relevant in a murder and assault trial where character, reputation, attitudes and approaches to policing and biases, along with impeachment evidence, will be central, not simply the controlling law on use of force." Dkt. No. 37, Ex. C at 2.

Lyman contends the State's "extreme view makes almost everything about an officer's past and personal life potentially incriminating." Dkt. No. 37 at 3. As such, Lyman states that the parties discussed his "Fifth Amendment issue the day before [Lyman's] deposition," and Plaintiffs knew that Lyman "was clear that he would not answer any questions on the incident, policy, training, past uses of force, tattoos, social associations or 'biases,' or any of the other matters at issue in *State v. Nelson*." *Id*. at 7. Lyman states that "[t]he parties discussed the most efficient way to confront the issue, Plaintiffs did not waste everyone's time asking seven hours of questions to which we all knew the answers." *Id*. at 7. Instead, they have asked the Court for guidance. *Id*.

## II.   DISCUSSION

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Courts may issue a protective order concerning a parties' Fifth Amendment privilege. *See*, *e.g.*, *Menster v. Liberty Mut. Fire Ins., Co.*, C13-00775-RSL, 2013 WL 5770359, at *2 (W.D. Wash. Oct. 23, 2013). Under the Fifth Amendment of the United States Constitution, "[n]o person shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000).

Lyman argues that questioning at his deposition about specific subjects, including the underlying incident, prior uses of force, knowledge of Auburn Police Department policy, private activities, and associations, could lead to his disclosure of incriminating evidence. *See* Dkt. No. 37. In response, Plaintiffs characterize Lyman's concerns about possible prosecution for Strickland's death as "imaginary." Dkt. No. 41 at 13. Plaintiffs also argue that Lyman has waived his Fifth Amendment right, and they request an order directing him to sit for another deposition and to answer an indeterminate series of questions at Defendants' expense. *Id*. at 2.

The Court holds, as a general matter, that Lyman may invoke his Fifth Amendment right in the context of this litigation. *See Rudy-Glanzer*, 232 F.3d at 1263. A person may invoke the Fifth Amendment if they "reasonably believe[ ] that . . . disclosures could be used in criminal prosecution, or could lead to other evidence that could be used in that manner." *Id*. The privilege against self-incrimination depends on the *possibility* of prosecution and extends to disclosures that "could provide an indirect link to incriminating evidence." *Id*. (internal quotation marks omitted) (citing *United Liquor Co. v. Gard (In re Seper)*, 705 F.2d 1499, 1501 (9th Cir.1983)); *see also In re Master Key Litig.*, 507 F.2d 292, 293 (9th Cir. 1974) (stating "the right to assert one's privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution.") (citations omitted).

Here, the crime of murder does not carry a statute of limitations. RCW 9A.04.080(a)(1). Washington's RCW 9A.16.040(4) uses a "good faith" objective standard to determine whether a "similarly situated reasonable officer" would have believed deadly force was necessary to prevent death or serious physical harm to the officer or another individual. Plaintiffs allege that Lyman unreasonably killed Strickland in the line of duty, alleging for example, "Officer Lyman's use of force was wholly excessive . . . objectively unreasonable . . . and directly caused the death of Enosa Strickland, Jr." and "Lyman's conduct was egregious and callous and may

well have been racially motivated." Dkt. No. 12 ¶¶ 4.4; 5.5. The prosecution in *State v. Nelson* demonstrates that at least one Washington prosecutor and court considered a broad set of facts, like Nelson's tattoos, which arguably demonstrated "an attitude of aggressiveness," to be incriminating. *See* Dkt. No. 38, Ex. D; *see also* Exs. B, C, E. Along the same lines, Plaintiffs have explicitly sought information from Lyman that could be incriminating; for example, at his deposition: "[y]ou targeted Mr. Strickland because of his race?" and "[y]ou gave up control of Mr. Strickland's right hand in order to shoot him in the back of the head; correct?" Dkt. No. 38, Ex. G, 12:8-10, 17-18. Indeed, Plaintiffs described Lyman's alleged actions as "likely criminal" and a "criminal taking of life." Dkt. No. 31 at 2 & n.3. Because Strickland could face prosecution for the events at the center of this lawsuit, he may invoke his Fifth Amendment right.

But the Fifth Amendment does not give Lyman the right to skip a deposition altogether or to state only once a blanket or continuing objection to all questions posed to him, or not, at deposition. *See Highlander Holdings, Inc. v. Fellner*, 3:18-CV-1506-AHG, 2020 WL 3498174, at *10 (S.D. Cal. June 29, 2020) (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). Rather, "the proper procedure is for the deponent to attend the deposition, be sworn under oath, and respond to those questions he can answer without running a risk of self-incrimination." *United States v. Hansen*, 233 F.R.D. 665, 668 (S.D. Cal. 2005) (citing *SEC v. Thomas*, 116 F.R.D. 230, 234 & n. 7 (D.Utah 1987)). "The only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right." *Glanzer*, 232 F.3d at 1263. "[A]ny invocation of the privilege by Defendant . . . during a deposition must be specific to the question asked." *Fellner*, 3:18-CV-1506-AHG, 2020 WL 3498174, at *11.

Here, the parties did not complete Lyman's deposition. *See* Dkt. No. 37 at 7. Plaintiffs do not bring a motion to compel responses to specific questions from Lyman, but argue instead that

Lyman waived his Fifth Amendment right when he answered Requests for Admissions and Interrogatories on topics, and that he incorporated into this case his interviews in "investigative files and officer statements" when he referred Plaintiffs to those files. Dkt. No. 41 at 10. But the privilege is not so easily waived, and Lyman does not identify for the Court the specific questions for which he intended to invoke his Fifth Amendment right. *See* Dkt. No. 37. Instead, he effectively refused to answer *every* question at his deposition. *See* Dkt. No. 38, Ex. G.

In sum, neither party squarely puts a specific question before the Court for a determination on whether Lyman's privilege applies or has been waived. The Court does not follow Lyman's contention that "[c]ourts have endorsed reviewing and making rulings on broader 'topics' of questions." Dkt. No. 37 at 8. "There is no bright-line rule . . . with respect to waiver of the Constitutional Fifth Amendment privilege against self-incrimination." *Universal Trading & Inv. Co. v. Kiritchenko*, C-99-03073MMCEDL, 2007 WL 2300740, at *4 (N.D. Cal. Aug. 2, 2007). The Court will not speculate on when or whether his privilege applies, or consider Plaintiffs' argument about whether it has been waived, without *specific* questions identified by the parties for that determination. *See* Dkt. No. 37 (citing *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1135 (C.D. Cal. 2018).

Plaintiffs may renote Lyman's deposition, with each side to bear their own costs. If necessary, the parties may seek further relief from the Court on this subject, but the Court will only consider waiver in the context of specific questions posed to Lyman.

### III.   CONCLUSION

Accordingly, Lyman's motion for protective order is GRANTED to the extent he seeks affirmation that he may invoke his Fifth Amendment right in this matter, including at deposition. But the motion is DENIED to the extent that Lyman seeks blanket protection against all inquiry—he must attend a deposition and assert his privilege on a question-by-question basis.

It is so ORDERED.

Dated this 26th day of June, 2023.

                                              Jamal N. Whitehead
                                              United States District Judge